| | |
|---|---|
| IVORY MEDINA, | |
| Plaintiff, | Civil Action No. |
| v. | 3:19-CV-00040 |
| NUVEEN FINANCE, LLC, and TIAA-CREF INDIVIDUAL AND INSTITUTIONAL SERVICES, LLC, | Jury Trial Demanded |
| collectively d/b/a | |
| TIAA-CREF FINANCIAL SERVICES | |
| Defendant. | |

## COMPLAINT

Comes now the Plaintiff, and complaining of the Defendant, alleges as follows:

### NATURE OF COMPLAINT

1. This action is brought to remedy discrimination on the basis of disability in the terms, conditions, and privileges of employment, protected by the Americans with Disabilities Act, as amended by The Americans with Disabilities Act Amendments Act of 2008, and for violation of Plaintiff's rights protected by Age Discrimination in Employment Act, 29 U.S.C. § 621, Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.

### CPARTIES, JURISDICTION, AND VENUE

2. Plaintiff, Ivory Medina (hereinafter "Medina" or "Plaintiff"), is a citizen of and a resident of Mecklenburg County, North Carolina.

3. Defendants, Nuveen Finance, LLC and TIAA-CREF Individual and Institutional Service, LLC, collectively d/b/a TIAA-CREF Financial Services, (hereinafter "TIAA" or "Defendant"), is a Foreign Corporation operating in Charlotte, North Carolina and may be served with process through its registered agent, Corporation Service Company, at 2626 Glenwood Avenue, Ste 550, Raleigh, NC 27608.

4. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as there are issues of Federal Law.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 (c) as Defendant is subject to the personal jurisdiction of this Court and because many of the acts giving rise to this action occurred in this District.

**ALLEGATIONS**

6. Medina, a black female, approximate age 52-54 at the time of the incidents alleged herein, began employment with Defendant in December 2012.

7. At all times relevant to this complaint, Medina worked as a Senior Project Manager III under the supervision of Allison Jones-Brown, a white female (hereinafter "Jones-Brown").

8. Medina was qualified for her position as Senior Project Manager III based on training and experience. Additionally, prior to the incidents identified in this complaint, Medina was never warned, counseled, disciplined, or threatened with termination.

9. Medina suffers from Post-Traumatic Stress Disorder ("PTSD") and a seizure disorder which TIAA was aware of. These conditions affect Medina's major life activities including, but not limited to, thinking, concentrating, working, breathing, and interacting with others. These major life activities were substantially limited by her conditions and she was disabled within the

2

meaning of the Americans with Disabilities Act 42 U.S.C. § 12101 et.seq., as amended by The Americans with Disabilities Act Amendments Act of 2008 (hereinafter "ADA").

10. TIAA was aware of Medina's disabilities and aware of her need for reasonable accommodations so that she could perform the essential functions of her job.

11. From the period of time from May 2016 through her termination, Jones-Brown began treating Medina differently than other younger, non-black and non-disabled employees. Jones-Brown created an expected set of standards for Medina that other younger, non-black and non-disabled employees were not required to follow. As one example only, Medina was required to complete at least two status reports for Jones-Brown on weekly basis, while other employees were only required to complete one report or none at all. This substantially increased Medina's work load overall and in comparison to younger, non-black and non-disabled employees.

12. In addition to the extra standards, Jones-Brown also made comments to Medina on a regular and ongoing basis about her race, age, and disability. Examples of some of those comments are:

- Jones-Brown had to micro-manage Medina so that Medina could "understand her place" and understand that Jones-Brown was "higher" than Medina.
- "You're doing an excellent job, but I want to make sure you don't get lazy like some of the other black people that work here."
- Jones-Brown told Medina that she had an "expressive personality" and Medina was sent to take a personality culture test because Jones-Brown did not know how to "handle black people."
- "If I knew how old you were I wouldn't have hired you."
- "I don't like black people, I don't have good luck with black people on my team."
- "Black people in my life can't be trusted."
- "I don't expect Indian employees to read and write."
- "I didn't know you were older."

3

Case 3:19-cv-00040-FDW-DSC   Document 1   Filed 01/28/19   Page 3 of 12

- "No wonder I can't deal with you, no wonder you think you know more than me. Every time I talk to you, you get older and older."
- "Corporate America works best when they have the "New York Style," but when they're older and start dealing with menopause."
- "I have had problems with older employees."
- "What generation are you?"
- "You say you have a master's degree, but if you were really that ill where you needed to be full time at home then how did you manage to work at other jobs? I don't believe you are disabled, and if you are disabled I don't believe we should have to accommodate you."
- "If you're really that disabled you should go get on welfare like other black people."

These and similar hostile comments towards Medina based on age, race and disability were made on a daily basis.

13. In or about May 2016, Medina complained about the comments to Jones-Brown's supervisor, Rashmi Badwe (hereinafter "Badwe"). Badwe informed Medina that other people had also made complaints about Jones-Brown's behavior, and for Medina to give it time and to see how it would work out. Medina was also told that Badwe would be bringing another person on to serve as a go-between, and that Badwe knew that Jones-Brown was a difficult person to work with.

14. In a second meeting in May 2016, Medina met with Badwe to address concerns and complaints within the team. Medina told Badwe again during the meeting about how she was being treated and that the treatment towards her was motivated by her race, age, and disability, and that nothing had changed since the last meeting. Badwe informed Medina during the meeting that Brian McGinley (hereinafter "McGinley") was coming aboard and that he would be an "open person," receptive to Medina's concerns, and able to handle her complaints about Jones-Brown's behaviors.

4

15. Following McGinley's hire, Medina addressed her concerns about Jones-Brown's actions on an ongoing basis up to the point of her termination. Medina showed McGinley the status reports and scheduled meetings, and McGinley set up monthly meetings with Medina to go over the work she completed each month. During each of these meetings, Medina addressed with McGinley the issues she was experiencing related to her race, age, and disability. McGinley told Medina that he had been meeting with Badwe and was not aware of other employees having any of the same issues as Medina.

16. Medina was able to perform her job as Senior Project Manager III despite her disability with reasonable accommodations. Specifically, that she be allowed to work from home, as the fluorescent lights at TIAA's location triggered Medina's seizure disorder. However, in February 2018, management decided that they would be requiring all work-from-home employees to come back into the office.

17. Medina submitted documentation from her doctor in or about February 2018 to support her request for accommodations, specifically that she be allowed to work from home. Defendant partially granted Medina accommodations, enabling her to work from home 75% of the time.

18. However, following the grant of her accommodations, Medina began experiencing additional hostile conduct and behavior directed at her by her supervisor, Jones-Brown. Jones-Brown began spreading false information about Medina to other employees and made comments to Medina that her disability and medical needs were not important to TIAA, to Jones-Brown, or to management.

19. During one of her meetings with McGinley, Medina questioned him about what was going to be done to address the ongoing behavior from Jones-Brown and the issues she was

5

experiencing. McGinley told Medina that he wanted to get through a summit that was scheduled for March 2018, and afterwards they would look into moving Medina away from Jones-Brown.

20. Upon information and belief, Medina's reports of the discrimination and harassment were in compliance with TIAA policy.

21. On or about April 9, 2018, Medina was called to a meeting with Human Resources, where she was told that she was being placed on administrative leave pending the results of an investigation for allegedly sending inappropriate emails to other employees.

22. On April 19, 2018, Medina received a letter stating the TIAA was terminating her effective April 9, 2018 for alleged violation of the code of business conduct. Upon information and belief, Medina's position was then replaced by a younger, non-black and non-disabled employee.

23. Medina suffered severe emotional distress as a result of the discrimination, harassment and termination for which she was required to seek medical attention and for which she is still under a doctor's treatment.

24. At all times relevant Medina was a "qualified employee" as defined by 42 U.S.C. § 12111(5)(A) of the ADA as she had been performing all of the essential functions or could have performed the essential functions with a reasonable accommodation.

25. TIAA was a "covered" employer as defined in 42 U.S.C. § 12111(5)(A) of the ADA at all relevant times.

26. On or about October 2, 2018, Medina filed a charge of discrimination on the basis of disability, race, age, and retaliation with the Equal Employment Opportunity Commission (EEOC). (A redacted copy of that Charge is attached hereto as Exhibit A).

27. Medina received her Notice of Right to Sue from the EEOC, with a mailing date of October 29, 2018. (A redacted copy of the Notice, stamped received on October 30, 2018, is attached hereto as Exhibit B).

28. This action is filed within ninety (90) days of Medina's receipt of the Notice of Right to Sue from the EEOC.

## FIRST CLAIM FOR RELIEF
### (Disability Discrimination)

29. Medina incorporates by reference the allegations of paragraphs 1 through 28 of this complaint.

30. Medina had a disability as defined by the ADA, at the time she was terminated from employment by Defendant.

31. Medina was subjected to discrimination and terminated by Defendant due to her disability.

32. Defendant's termination of Medina because of her disability and/or its disparate treatment of her due to her disability even though she was otherwise qualified for her position violates the ADA.

33. Defendant's discriminatory conduct caused and continues to cause Medina to suffer monetary loss and emotional distress.

34. Defendant's reasons for termination are pretextual.

35. Defendant's actions in terminating Plaintiff are intentional, willful, and in reckless disregard for Plaintiff's legally protected rights and justifies awarding punitive damages.

36. Therefore, Medina now sues Defendant for violation of the Americans with Disabilities Act 42 U.S.C. § 12101 et.seq., as amended by The Americans with Disabilities Act Amendments Act of 2008.

## SECOND CLAIM FOR RELIEF
(Disability Harassment)

37. Plaintiff incorporates by reference the allegations of paragraphs 1 through 28 of this complaint.

38. The harassing actions of Defendant's employees were directed to Plaintiff on the basis of her disability.

39. The actions of Defendant's employee, Jones-Brown, were unwelcome, severe or pervasive, subjectively and objectively offensive.

40. Defendant's subjection of Plaintiff to a hostile work environment caused Plaintiff's damages including but not limited to losses in wages, salary and benefits and great emotional distress, mental pain, suffering, stress, grief, worry and mental anguish.

41. Defendant's subjection of Plaintiff to a hostile work environment that it knew existed and its failure to take appropriate corrective action with respect to the harassment was willful or wanton.

42. Defendant's actions in terminating Plaintiff are intentional, willful, and in reckless disregard for Plaintiff's legally protected rights and justifies awarding punitive damages.

43. Therefore, Plaintiff sues Defendant for the unlawful harassment in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12010.

## THIRD CLAIM FOR RELIEF
(Race Harassment)

44. Plaintiff incorporates by reference the allegations of paragraphs 1 through 28 of this Complaint.

45. The actions of Defendant's employee, Jones-Brown, was directed to Plaintiff because of her race, black.

8

46. At all times during Plaintiff's employment with Defendant, the harassing conduct was severe or pervasive, unwelcome, subjectively and objectively offensive to Plaintiff.

47. Defendant's subjection of Plaintiff to a hostile work environment caused Plaintiff's damages, including but not limited to great emotional distress, mental pain, suffering, stress, grief, worry and mental anguish.

48. Defendant's actions in terminating Plaintiff are intentional, willful, and in reckless disregard for Plaintiff's legally protected rights and justify awarding punitive damages.

49. Therefore, Plaintiff sues Defendant for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. seq.

## FOURTH CLAIM FOR RELIEF
### (Race Discrimination)

50. Plaintiff incorporates by reference the allegations of paragraphs 1 through 28 of this Complaint.

51. Plaintiff is black, and Defendant's conduct was directed to Plaintiff because of her race.

52. Plaintiff's race was the motive for Defendant's decision to terminate Plaintiff.

53. Plaintiff was replaced by a non-black employee.

54. Defendant's reasons for termination are pretextual.

55. Defendant's subjection of Plaintiff to racial discrimination caused Plaintiff damages, including but not limited to great emotional distress, mental pain, suffering, stress, grief, worry and mental anguish.

56. Defendant's conduct towards Plaintiff was intentional, willful, and in reckless disregard for Plaintiff's legally protected rights, and justifies awarding punitive damages.

57. Therefore, Plaintiff sues Defendant for discrimination in violation of Title VII of the Civil Rights Act and of 42 U.S.C. § 1981.

## FIFTH CLAIM FOR RELIEF
### (Age Harassment)

58. Plaintiff incorporates by reference the allegations of paragraph 1 through 28 of the Complaint.

59. The actions of Defendant's employee, Jones-Brown, was directed towards Plaintiff because of her age, fifty-two through fifty-four (52-54).

60. At all times during Plaintiff's employment with Defendant, the harassing conduct was pervasive, unwelcome, subjectively and objectively offensive to Plaintiff.

61. Defendant's subjection of Plaintiff to a hostile work environment and discrimination based on age caused Plaintiff's injuries including but not limited to lost wages, salary, and benefits.

62. Defendant's actions in terminating Plaintiff are intentional, willful, and in reckless disregard for Plaintiff's legally protected rights and justifies awarding liquidated damages.

63. Therefore, Plaintiff sues Defendant for her termination in violation of 29 U.S.C. § 621 *et. seq.*

## SIXTH CLAIM FOR RELIEF
### (Age Discrimination)

64. Plaintiff incorporates by reference the allegations of paragraph 1 through 27 of the Complaint.

65. Plaintiff's age was the motive for Defendant's decision to terminate Plaintiff.

66. Plaintiff was replaced by a substantially younger employee.

67. Defendant's reasons for termination are pretextual.

68. Defendant's termination of Plaintiff due to her age (54) violated the ADEA, 29 U.S.C. § 621 *et. seq.*

69. Defendant's termination in violation of the ADEA caused Plaintiff's injuries including but not limited to lost wages, salary, and benefits.

70. Defendant's actions in terminating Plaintiff are intentional, willful, and in reckless disregard for Plaintiff's legally protected rights and justifies awarding liquidated damages.

71. Therefore, Plaintiff sues Defendant for her termination in violation of 29 U.S.C. § 621 *et. seq*

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that:

A. The Court enter a judgment in favor of Plaintiff and against Defendant to include compensation for lost wages, lost benefits, and other economic losses that were proximately caused by the discriminatory/unlawful actions referenced herein.

B. The Court enter an award in favor of Plaintiff and against Defendant for punitive damages caused by its intentional, willful, wonton, and reckless actions in subjecting Plaintiff to disability discrimination.

C. The Court enter a judgment in favor of Plaintiff and against Defendant pursuant to the ADEA for liquidated damages.

D. The Court enter an award in favor of Plaintiff and against Defendant for great emotional distress, mental pain, suffering, stress, grief, worry, and mental anguish caused by Defendant's actions as alleged herein.

E. The Court enter an award in favor of Plaintiff and against Defendant for reasonable expenses and costs including attorney's fees.

F. This matter be tried by a jury

G. The judgment bear interest at the legal rate from the date of filing this action until paid.

H. Defendant be taxed with the costs of this action; and

I. The Court order such other and further relief as it may deem just and proper.

Respectfully submitted this the 28th day of January, 2019.

>/s/ KIRK J. ANGEL
>Kirk J. Angel NCSB#  33559
>Attorney for the Plaintiff
>THE ANGEL LAW FIRM, PLLC
>109 Church Street N
>Concord NC 28025
>PO Box 1296 (28026)
>Telephone:  704.706.9292
>Facsimile:  704.973.7859
>e-mail:  kirk@mailalf.com